# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMPLAINT OF: ) | |
| ) | Civil Action No. 13-395 |
| CAMPBELL TRANSPORTATION ) | |
| COMPANY, INC. ) | Judge Cathy Bissoon |
| For Exoneration or Limitation of Liability ) | |

## MEMORANDUM ORDER

### I. MEMORANDUM

For the reasons stated below, the Motion to Increase the Value of the Limitation Fund and for Increased Security (Doc. 81), filed by Claimants Raymond and Patricia Kirich, will be denied.

### BACKGROUND

Plaintiff Campbell Transportation Company ("CTC") brought the instant action pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq.*, seeking exoneration or limitation of liability from an incident that occurred on April 1, 2010. *See generally* Compl. (Doc. 1). CTC brought the action after being sued by Claimants Raymond and Patricia Kirich on a theory of negligence, for the same April 1, 2010 incident. Id. at ¶ 13. Specifically, the Kiriches, in their lawsuit, claimed that Mr. Kirich suffered injuries when he fell onto the gunnel of one of CTC's barges, while it was docked at Mile 2.2 on the Monongahela River. Id. At the time of the alleged incident, Mr. Kirich, an employee of Richard Lawson Excavating, was unloading gravel from the barge, which had been transported to Mile 2.2 by CTC pursuant to a contract between CTC and Hanson Aggregates ("Hanson"). Id.; Claimants' Br. (Doc. 82) at 6.

Upon filing the instant action, CTC, in accordance with Supplemental Admiralty Rule F(1) of the Civil Rules of Civil Procedure, deposited as security the fair market value of the

barge involved, and also provided an affidavit indicating that there was no pending freight at the time of the incident. See id. at ¶¶ 21-24. Claimants Raymond and Patricia Kirich have now filed the pending motion to increase the limitation fund to include the entire value of the aforementioned contract between CTC and Hanson as pending freight, and CTC has filed a brief in opposition (Doc. 83).

## ANALYSIS

Under the Limitation of Liability Act, the owner of a vessel may limit his liability to the value of the vessel and any pending freight. 46 U.S.C. § 30505(a). The Supreme Court has defined pending freight as the "earnings of the voyage." The Main v. Williams, 152 U.S. 122, 131 (1894). In doing so, the Supreme Court recognized that the purpose of the statute is to "limit the liability of vessel owners to their interest in the adventure." Id. "[P]ending freight is limited to the particular voyage at issue." Collins v. Cottrell Contracting Corp., 733 F. Supp. 2d 690, 706-07 (E.D.N.C. 2010). Therefore, the Court must identify the relevant "voyage" in order to determine the amount of pending freight. The term "voyage," however, "will not always have a fixed meaning." The Black Eagle, 87 F.2d 891, 894 (2d Cir. 1937). Indeed, determining the relevant voyage "is a fact-specific inquiry that depends on the particular circumstances of the situation presented." Collins, 733 F. Supp. 2d at 696.

Here, Claimants ask the Court to increase the limitation fund to include the entire value of the Transportation Agreement between CTC and Hanson, which was in operation at the time of the April 1, 2010 incident, as pending freight under 46 U.S.C. § 30505A. Claimants' Br. (Doc. 82) at 5. In doing so, Claimants essentially argue that the relevant "voyage" here consists of the entirety of the towage services performed by CTC under its contract with Hanson. To support their argument, Claimants point to several cases where courts have found the value of

agreements, such as towing or dredging contracts, to be pending freight. Id. at 3-5. On the other hand, CTC argues that, given the nature of its contract with Hanson, to include its entire value would increase the fund beyond the scope of the voyage. Pl.'s Br. (Doc. 83) at 6. The Court agrees with CTC.

The contract between CTC and Hanson was in effect for multiple years, and provided that CTC would transport barge loads of sand, gravel, and crushed stone for Hanson between various points and zones of origin and destination on the Allegheny, Monongahela and Ohio Rivers. *See* Agreement (copy attached under Doc. 83-2). The contract provided for an annual minimum tonnage that would be transported by CTC, but did not set specific dates or times that CTC would transport the tonnage. Id. at ¶¶ 2-3. Instead, CTC was to transport such tonnage as designated by Hanson. Id. at ¶ 3. In exchange, Hanson would pay CTC for each barge load transported, with such compensation depending on the tonnage of the barge, as well as both the origin and the destination of the trip. Id. at ¶¶ 6-7. Importantly, the agreement provided that freight was considered fully earned when the tow was delivered to its destination. Id. at ¶ 6.

These provisions reveal that the master contract consisted of several separate and distinct voyages, rather than one overarching, multi-year voyage. As such, pending freight must be limited to the particular voyage at issue under the contract, *not* the entirety of the master transportation agreement. *See* Collins, 733 F. Supp. 2d at 697 (finding that the pending freight of the vessel, which was engaged in a discrete phase of a multi-phase contract, included only the amount allotted to the discrete phase at issue); In re Pacific Inland Nav. Co., 263 F. Supp. 915, 918 (D. Haw. 1967) (finding that the agreement was "one which contemplated a series of separate and distinct voyages" and therefore the total earnings of the tug during the entire charter period were not pending freight); In re Offshore Specialty Fabricators, Inc., 2002 WL 827398, at

*5 (E. D. La. Apr. 30, 2002) (finding that, given the distinct phases of the project, the value of the pending freight must be limited to the portion of the contract pertaining to the relevant phase). To include the entire value of the master transportation agreement as pending freight would be to "increase the fund beyond the scope of the voyage." *See* Offshore Specialty Fabricators, 2002 WL 827398, at *5.

Turning to the relevant voyage here, the record reveals that CTC's barge was already docked at Mile 2.2 on March 30, 2010, two days prior to Mr. Kirich's accident. *See* Pl.'s Br (Doc. 83) at Ex. A. As such, the voyage already had ended by the time Mr. Kirich fell on the barge on April 1, 2010. *See* The Pelotas, 21 F.2d 236, 238-39 (E.D. La. 1927) ("a voyage of a vessel has been consistently recognized and defined as the sailing or passage or transit of a ship from her port of origin to her port of destination. The voyage ends when the vessel is safely moored at her port of final destination, and is ready for unloading."). Moreover, at the time the barge was docked, freight was already considered fully earned, pursuant to the terms of the master contract. *See* Agreement (copy attached under Doc. 83-2) at ¶ 6. Accordingly, there was no pending freight, and under these circumstances, the Court will not increase the limitation fund to include any compensation received by CTC under its agreement with Hanson. *See* The Pelotas, 21 F.2d at 238-39 (finding that a vessel's voyage had ended when it was safely anchored in the harbor, regardless of whether there was still cargo aboard); The C.F. Coughlin, 25 F. Supp. 649, 650 (W.D.N.Y. 1938) ("The limits within which [the vessel] would earn her freight should determine the limits of her voyage.").

## II. ORDER

Consistent with the foregoing, Claimants' Motion to Increase the Value of the Limitation Fund and for Increased Security **(Doc. 81)** is **DENIED**.

IT IS SO ORDERED.

October 16, 2014                                         s\Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge


cc (via ECF email notification):

All Counsel of Record